[No. S091459. Aug. 8, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
ZUHEIR ANIS TOTARI, Defendant and Appellant.

878

**COUNSEL**

Norton Tooby, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman, Violet M. Lee and Sharon G. Birenbaum, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

CHIN, J.—Penal Code section 1016.5[1] requires that, before accepting a plea of guilty or nolo contendere to any criminal offense, the trial court must advise the defendant that if he or she is not a United States citizen, conviction of the offense may result in deportation, exclusion from admission to the United States, or denial of naturalization. The statute allows the defendant to move to vacate the judgment if the trial court fails to give the required advisements. In *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 203-204 [96 Cal.Rptr.2d 463, 999 P.2d 686] (*Zamudio*), we recognized that a motion to vacate a judgment under section 1016.5 may be brought in the trial court after judgment has been imposed. In this case, defendant unsuccessfully moved to vacate the judgment against him 13 years after it was imposed. The narrow issue before us is whether the trial court's denial of defendant's statutory motion to vacate the judgment is an appealable order. As explained below, we conclude that defendant may appeal from the trial court's denial of his section 1016.5 motion to vacate.

### BACKGROUND

Defendant is an Israeli citizen and immigrated to the United States in 1976. On May 28, 1985, in Santa Clara County Superior Court case No. 100337, defendant was convicted of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) based on a guilty plea. On that same date, in Santa Clara County Superior Court case No. 100338, defendant also pleaded guilty and was convicted of check fraud (Pen. Code, § 476a, subd. (a)) and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). On July 18, 1985, in both cases, the trial court placed defendant on probation for three years.

On October 26, 1987, in both cases, the trial court granted defendant's requests for early termination of probation and limited expungement of record, pursuant to sections 1203.3 and 1203.4.

On August 10, 1998, defendant moved to vacate his 1985 convictions on several grounds, including an allegation that the trial court failed to inform him adequately of the potential immigration consequences of his plea, in violation of section 1016.5. In support of his motion, defendant submitted his own declaration and one by his wife. Defendant declared that, as a result of his criminal convictions, he had been deported by the Immigration and Naturalization Service (INS) on March 27, 1998, and that he was awaiting a decision from the INS to readmit him to the United States to rejoin his wife

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

and three children. His wife declared that, "On October 26, 1987, we obtained an expungement of [these] conviction[s] under Penal Code § 1203.4, and believed that this order had eliminated any adverse immigration consequences of the conviction." Defendant documented that the reporter's transcript and court reporter's notes of the guilty plea hearing had been destroyed, as authorized under Government Code section 68152.

The prosecutor opposed the motion to vacate and argued, among other things, that defendant's section 1016.5 motion to vacate was not the appropriate motion because it could only be made before judgment is imposed. He further argued that, even if a section 1016.5 motion may be made postjudgment, the 13-year delay between defendant's pleas and his motions to vacate was unreasonable. Defendant knew, before the sentencing hearing in 1985, that an immigration hold had been placed on him by the INS as a result of the convictions. The probation reports, that had been prepared before sentencing on the 1985 convictions, reflected that a hold had been placed on defendant and that immigration officials represented that deportation proceedings would begin after completion of any period of incarceration served by defendant. In support of the motion to vacate, defendant denied that he knew he could be deported; he believed that the expungement of his record, under section 1203.4, protected him from deportation.

On September 15, 1998, the superior court denied defendant's motion to vacate, stating: "I'm concerned with the 13-year delay between time of plea or approximately 13 years and then a motion to vacate the judgment. And it's not your fault, counsel, obviously. But it is the responsibility of the defendant to exercise due diligence in bringing a motion of this type. So the motion to vacate will be denied."

After obtaining a certificate of probable cause (§ 1237.5), defendant purported to appeal the trial court's denial of his motion to vacate, pursuant to section 1237, subdivision (b). The Court of Appeal held that the trial court's denial order was a nonappealable order and dismissed the appeal. We granted defendant's petition for review to determine whether a trial court's denial of a postjudgment motion to vacate, pursuant to section 1016.5, is an appealable order.

## DISCUSSION

Section 1016.5, subdivision (a), requires that: "Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant:

"If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

The statute provides a remedy, in the form of a motion to vacate, for a trial court's failure to give the required admonishments: "If, after January 1, 1978, the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty. Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement." (§ 1016.5, subd. (b).)

In *Zamudio,* the defendant moved to vacate a criminal judgment based on a no contest plea that he had made six years earlier. The trial court granted the defendant's section 1016.5 motion and the Court of Appeal denied the People's petition for writ relief. We determined that the trial court did not err in failing to deny the defendant's section 1016.5 motion on timeliness grounds because there was no evidence he delayed unreasonably in moving to vacate the judgment. We held that a defendant's failure to object to omitted or incomplete advisements of immigration consequences, at or before sentencing, does not necessarily waive the alleged error. (*Zamudio, supra,* 23 Cal.4th at p. 203.) Our conclusion was consistent with the plain language of section 1016.5, which contains no provision indicating when a defendant must make a motion to vacate. (*Zamudio, supra,* at p. 204.)

As noted, we must decide whether the trial court's denial of defendant's section 1016.5 motion to vacate, brought 13 years after imposition of judgment, can be appealed.[2] " 'It is settled that the right of appeal is statutory and that a judgment or order is not appealable unless expressly made so by statute.' " (*People v. Mazurette* (2001) 24 Cal.4th 789, 792 [102 Cal.Rptr.2d 555, 14 P.3d 227].) Although section 1016.5 provides the remedy of a motion to vacate, it does not specifically authorize an appeal

---

[2]Several courts have accepted, without comment, the appealability of rulings in motions to vacate brought under section 1016.5, subdivision (b), for failure to advise of immigration consequences. (*People v. Suon* (1999) 76 Cal.App.4th 1, 3 [90 Cal.Rptr.2d 1]; *People v. Ramirez* (1999) 71 Cal.App.4th 519, 521 [83 Cal.Rptr.2d 882]; *People v. Gontiz* (1997) 58 Cal.App.4th 1309, 1312 [68 Cal.Rptr.2d 786], disapproved on other grounds in *Zamudio, supra,* 23 Cal.4th at p. 200, fn. 8.)

from the denial of such motion. However, section 1237 provides that a defendant may appeal from "a final judgment of conviction" (§ 1237, subd. (a)) or from "any order made after judgment, affecting the substantial rights of the party" (§ 1237, subd. (b)).

█ Although section 1237, subdivision (b), literally permits an appeal from any postjudgment order that affects the "substantial rights" of the defendant, the right to appeal is limited by the qualification that, ordinarily, no appeal lies from an order denying a motion to vacate a judgment of conviction on a ground which could have been reviewed on appeal from the judgment. (*People v. Thomas* (1959) 52 Cal.2d 521, 527 [342 P.2d 889] (*Thomas*).) "In such a situation appeal from the judgment is an adequate remedy; allowance of an appeal from the order denying the motion to vacate would virtually give defendant two appeals from the same ruling and, since there is no time limit[] within which the motion may be made, would in effect indefinitely extend the time for appeal from the judgment. [Citation.] The considerations are the same whether the matters sought to be presented by motion to vacate actually were presented to the trial court prior to judgment of conviction, or whether such matters should have been but were not so presented." (*Ibid.*) In other words, "an order ordinarily is not appealable when the appeal would merely bypass or duplicate appeal from the judgment itself." (*People v. Gallardo* (2000) 77 Cal.App.4th 971, 980-981 [92 Cal.Rptr.2d 161] (*Gallardo*).)

Courts have made various exceptions to the above general rule of nonappealability, such as when the record on appeal would not have shown the error (see *Gallardo, supra,* 77 Cal.App.4th at pp. 981-982; 6 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Appeal, § 54, p. 300), when the final judgment that is attacked is void (see *Thomas, supra,* 52 Cal.2d at pp. 528-529; 6 Witkin & Epstein, *supra,* § 55, p. 300), or when clarification of the law is deemed important in the court's discretion (see *People v. Banks* (1959) 53 Cal.2d 370, 379 & 380, fn. 5 [1 Cal.Rptr. 669, 348 P.2d 102]; 6 Witkin & Epstein, *supra,* § 56, pp. 301-302). In the circumstance of a silent record, "an appeal from the judgment would have afforded no relief for it would not have brought up a record showing the error of which defendant complained." (*Thomas, supra,* 52 Cal.2d at p. 528.)

█ In dismissing the appeal, the Court of Appeal here stated: "To allow defendant to appeal from the denial of his motions to vacate the judgments in this case would allow defendant to have two appeals from the same ruling. This is not a silent-record case. As defendant conceded in his moving papers, the docket in Superior Court case No. 100337 indicated that some section 1016.5 admonition was given. Whether the admonition was sufficiently clear

was an issue that should have been raised in an appeal from that action. Defendant may not wait for 13 years to take an appeal from the 1985 judgments."

Thus, the Court of Appeal found that the general rule of nonappealability applied and that defendant should have raised the issue on an appeal from the initial judgments of conviction. The Attorney General echoes the Court of Appeal's reasoning, arguing that defendant "could and should have raised the issue of inadequate advisements under section 1016.5 when he still had a right to pursue a direct appeal from the judgment." Unlike the Court of Appeal, which failed to cite *Zamudio, supra,* 23 Cal.4th 183, the Attorney General recognizes that, under *Zamudio* (*id.* at pp. 203-204), a defendant who failed to object to omitted or incomplete advisements would not be barred from pursuing a postjudgment motion to vacate where he may not have been aware of the possibility of immigration consequences at or before sentencing and, therefore, had no reason to question the adequacy of the trial court's advisements on appeal from the judgment. As evidenced by the statement of legislative intent in section 1016.5, the Attorney General correctly observes that the Legislature enacted the statute to protect alien defendants who pleaded guilty without knowing that their guilty plea could lead to immigration consequences.[3]

In *Zamudio,* we recognized that a noncitizen defendant has a "substantial right" to be given complete advisements under section 1016.5. (*Zamudio, supra,* 23 Cal.4th at pp. 199-200.) The Attorney General does not contest that the erroneous denial of a motion to vacate under section 1016.5 affects the "substantial rights" of a noncitizen defendant. Instead, he contends that this particular defendant's "substantial rights" have not been violated because he could have contested the adequacy of the immigration advisements on appeal. (See *People v. Howerton* (1953) 40 Cal.2d 217, 220 [253 P.2d 8] [" '[s]ubstantial rights' under subsection three of section 1237 are not affected when defendant's objections concern matters that could have been reviewed on timely appeal from the judgment"].) The Attorney General claims that "the record shows in four significant ways that [defendant] knew

---

[3]Subdivision (d) of section 1016.5 provides, in pertinent part, that "The Legislature finds and declares that in many instances involving an individual who is not a citizen of the United States charged with an offense punishable as a crime under state law, a plea of guilty or nolo contendere is entered *without the defendant knowing* that a conviction of such offense is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. Therefore, it is the intent of the Legislature in enacting this section to promote fairness to such accused individuals by requiring in such cases that acceptance of a guilty plea or plea of nolo contendere be preceded by an appropriate warning of the special consequences for such a defendant which may result from the plea." (Italics added; see also *Zamudio, supra,* 23 Cal.4th at pp. 193-194, 199, 209.)

of the potential immigration consequences before he was sentenced in 1985." Focusing on the factual question of defendant's knowledge, the Attorney General argues that "[b]ecause [defendant] knew the immigration consequences of his plea before he was sentenced, he could and should have raised the issue of inadequate advisements under section 1016.5 when he still had a right to pursue a direct appeal from the judgment."

Defendant responds that the Attorney General confuses the contested issues on the merits with the procedural question of appealability. We agree.

■ To prevail on a motion to vacate under section 1016.5, a defendant must establish that (1) he or she was not properly advised of the immigration consequences as provided by the statute; (2) there exists, at the time of the motion, more than a remote possibility that the conviction will have one or more of the specified adverse immigration consequences; and (3) he or she was prejudiced by the nonadvisement. (*Zamudio, supra,* 23 Cal.4th at pp. 192, 199-200; *People v. Dubon* (2001) 90 Cal.App.4th 944, 951-952 [108 Cal.Rptr.2d 914].) On the question of prejudice, defendant must show that it is reasonably probable he would not have pleaded guilty or nolo contendere if properly advised. (*Zamudio, supra,* 23 Cal.4th at pp. 209-210.) Whether defendant knew of the potential immigration consequences, despite inadequate advisements at the time of the plea, may be a significant factor in determining prejudice or untimeliness. (*Id.* at pp. 199, 207, 209-210.) Thus, in deciding the merits of defendant's motion to vacate, it may be important for the trial court to determine the factual issue of knowledge.

■ If we accept the Attorney General's argument, an issue to be determined on the merits is itself the test of appealability. Because the procedural question depends on a resolution of the merits, that question must be made on a case-by-case basis. We decline to adopt the Attorney General's proposal. Aside from its judicial inefficiency, the proposal would lead to anomalous appellate procedures. Here, in denying the motion to vacate, it is unclear if the trial court impliedly found that defendant knew of the immigration consequences at the time of the plea. The court was "concerned with the 13-year delay" between defendant's pleas and motions to vacate the judgment and found that defendant failed "to exercise due diligence in bringing a motion of this type." In opposing the motion, the prosecutor argued that defendant could not make a postjudgment motion to vacate, but that if he could make such a motion, the delay was unreasonable. It is unclear if the trial court denied the motion based on defendant's lack of "due diligence" in failing to make the motion before judgment, or in failing to bring the postjudgment motion in a timely manner.

In any event, the Attorney General does not argue that the trial court made an implied factual finding of knowledge that is supported by substantial

evidence. Rather, he appears to argue that we, as a reviewing court, must make a preliminary de novo finding of defendant's knowledge to assess the procedural question of appealability. In other words, we must determine whether this defendant is likely to prevail in order to determine whether he can appeal. Under the Attorney General's analysis, other appellate courts must do the same on a case-by-case basis. The result could potentially produce inconsistent and conflicting factual findings within the same case. For example, assume the trial court, in this case or any other case, had made an express finding that defendant knew of the immigration consequences at the time of the plea. If a reviewing court makes a de novo determination that defendant did not know of the immigration consequences at the time of the plea and finds the case appealable, that same court would then have to defer to the trial court's factual finding if supported by substantial evidence. In other words, the Attorney General proposes a rule that would require the reviewing court to use different standards of review for the procedural and substantive questions, which may lead to different results in the same case.[4]

The Attorney General's reliance on *Thomas* is not persuasive. Although the defendant in *Thomas*, as in this case, appealed from a postjudgment order denying a motion to vacate a judgment of conviction, the situation in *Thomas* is materially different from the one in this case. Unlike this case, the defendant in *Thomas* alleged a jurisdictional defect, attacking the underlying judgment as void by motion to vacate and by appeal from the order of denial. (*Thomas, supra,* 52 Cal.2d at pp. 528-529.) An exception to the general rule of nonappealability of a postjudgment order of denial occurs when the final judgment at issue *is* void. (*Ibid.*) In determining whether that exception applies, we considered defendant's contention on the merits (that the

---

[4]In urging that we make a de novo determination of knowledge, the Attorney General analogizes to the procedures followed in extraordinary writ proceedings. Before the enactment of the statutory motion to vacate judgment under section 1016.5, nonstatutory motions to vacate judgment were viewed as petitions for a writ of error *coram nobis*. (See *In re Paiva* (1948) 31 Cal.2d 503, 508-510 [190 P.2d 604]; *Gallardo, supra,* 77 Cal.App.4th at p. 982; *People v. Quesada* (1991) 230 Cal.App.3d 525, 531, fn. 2 [281 Cal.Rptr. 426]; *People v. Soriano* (1987) 194 Cal.App.3d 1470, 1474-1475 [240 Cal.Rptr. 328, 65 A.L.R.4th 705]; *People v. Wiedersperg* (1975) 44 Cal.App.3d 550, 552-553 [118 Cal.Rptr. 755].) In an appeal from a trial court's denial of an application for the writ of error *coram nobis*, a reviewing court initially determines whether defendant has made a prima facie showing of merit; if not, the court may summarily dismiss the appeal. (*People v. Shorts* (1948) 32 Cal.2d 502, 506-507 [197 P.2d 330]; *Gallardo, supra,* 77 Cal.App.4th at p. 982; *People v. Kraus* (1975) 47 Cal.App.3d 568, 575, fn. 4 [121 Cal.Rptr. 11]; *People v. Williams* (1965) 238 Cal.App.2d 585, 587-588 [48 Cal.Rptr. 67].) Here, the Court of Appeal found that, although defendant's statutory motion to vacate judgment was "similar" to a petition for writ of error *coram nobis*, it was *not* the "same thing." The parties do not claim otherwise; they do not contend that defendant's appeal is part of an extraordinary writ proceeding. Moreover, a reviewing court's de novo finding of fact to determine a right of appeal is far different from its determination of the legal sufficiency of a prima facie showing of merit.

judgment is void) to determine whether there is a jurisdictional defect. (*Id.* at p. 529.) As recognized in *Thomas*: "When the question of jurisdiction is presented by motion to vacate and by appeal from the order of denial, the appellate court's determination as to the appealability of the order will ordinarily depend upon its decision of the merits of the appeal, i.e., upon its determination whether there was indeed a jurisdictional defect." (*Ibid.*) Although the void judgment exception "involves a kind of bootstrap-lifting, i.e., the ground of reversal that is to be determined is itself the test of appealability" (6 Witkin & Epstein, Cal. Criminal Law, *supra*, Criminal Appeal, § 56, p. 301), *Thomas* deemed, within this court's discretion, that the denial order was an appealable order and *then* determined the merits against defendant (no jurisdictional defect). We cautioned that "our action in this regard is not to be considered general authority for the appealability of an order which denies a motion to vacate a judgment on grounds which could have been presented on appeal from the judgment." (*Thomas, supra,* 52 Cal.2d at p. 529.)

Thus, *Thomas* authorizes appellate courts, on a case-by-case basis, to examine the merits of a jurisdictional defect claim in determining the procedural question of appealability. But the issue of jurisdiction is a *legal* one. In this case, the Attorney General urges that we, as an appellate court, should decide the *factual* issue of knowledge as a predicate for determining appealability. As noted, this procedure, requiring different standards of review for the procedural and substantive questions, might lead to anomalous results in the same case. Moreover, appellate courts are not in the best position to decide factual issues, especially ones that are disputed.

More important, unlike this case where we have a *statutory* postjudgment motion to vacate, it appears that the defendant in *Thomas* was appealing from a *nonstatutory* postjudgment motion to vacate. Because the grounds supporting a nonstatutory motion are not specifically defined, the "no second appeal" rule (see *Thomas, supra,* 52 Cal.2d at p. 527) serves as a procedural device to discourage defendants from raising *any* postjudgment claim that could have been raised before imposition of judgment or by way of direct appeal from the original judgment. (See *People v. Banks, supra,* 53 Cal.2d at p. 380.) On the other hand, the Legislature has established specific requirements for a motion to vacate under section 1016.5. Once the Legislature has determined that a noncitizen defendant has a substantial right to be given complete advisements and affords defendant a means to obtain relief by way of a *statutory* postjudgment motion to vacate, the "no second appeal" rule

loses its urgency and a denial order qualifies as an "order made after judgment, affecting the substantial rights of the party" (§ 1237, subd. (b)).[5]

Accordingly, we conclude that the Court of Appeal erred in holding that the trial court's denial of defendant's section 1016.5 motion to vacate was a nonappealable order. The denial order is an appealable order under section 1237, subdivision (b).

### CONCLUSION

We reverse the judgment of the Court of Appeal dismissing the appeal and remand the matter to that court with directions to refile the appeal and consider the merits thereof.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Brown, J., and Moreno, J., concurred.

---

[5]In civil cases, "it has become an established rule that an appeal lies from the denial of a *statutory motion to vacate* an appealable judgment or order." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 154, p. 218.)